STATE OF WEST VIRGINIA

*v.*

JACK FRANKLIN SHAFER

(No. 14921)

Decided December 11, 1981.

*Lobert & Shuman and John C. Lobert* for appellant.

*Chauncey H. Browning,* Attorney General and *Ann V. Gordon,* Assistant Attorney General, for appellee.

NEELY, JUSTICE:

Appellant, John Franklin Shafer, appeals from four separate judgment orders entered by the Circuit Court of Pocahontas County on 29 June 1979. The orders in question directed that the appellant be denied probation and sentenced to two consecutive indeterminate terms in the West Virginia Penitentiary of not less than one nor more than ten years and two concurrent sentences of the same length. The trial court signed the orders after a sentencing hearing which followed the appellant's guilty plea to four counts of grand larceny.

While working as an office clerk at Denmar State Hospital, the appellant took and cashed a number of checks made payable to the hospital. In March 1979, the Grand Jury of Pocahontas County returned four separate indictments against the appellant. Each indictment charged him with grand larceny of a specific check. The four checks mentioned in the indictments were dated 9 May 1978, 19 May 1978, 15 June 1978 and 21 June 1978.

On 27 March 1978 the appellant tendered pleas of "not guilty" to each indictment. However, on 12 June 1979 he withdrew his pleas of not guilty and tendered a plea of guilty to each indictment. During the lengthy course of questioning which the trial court conducted before accepting the pleas, the prosecuting attorney advised the trial court that some $300,000 was missing from Denmar State Hospital. The prosecutor then explained that, while the four checks in question totaled a sum of $15,995.00, the State had agreed to make no further presentments to the Grand Jury concerning the balance of the missing money in return for the appellant's guilty pleas. At the conclusion of the hearing the court accepted the appellant's pleas and directed the appellant to return on 22 June 1979 for sentencing. The court also directed the probation officer to prepare a report on the appellant's motion for probation.

At the sentencing hearing the court, having reviewed the probation officer's report, denied the motion for pro-

bation. The appellant then indicated that he would appeal the sentence and the court directed that a transcript of the sentencing hearing be prepared. Unfortunately, no transcript was ever prepared because the court reporter moved to California without leaving her tapes or notes. Repeated efforts on the part of the judge and his secretary to reach the reporter in California were fruitless.

At a hearing on the motion to reconsider the sentence on 20 August 1979, the trial court reiterated his reasons for denying probation.

To these facts the appellant has assigned the following errors: (1) the failure to provide a transcript of his sentencing hearing has denied the appellant due process of law; (2) the court abused his discretion in failing to grant probation; (3) the court erred in failing to state with specificity his reasons for denying probation; and (4) the multiple indictments violate the double jeopardy provisions of *West Virginia Constitution,* art. 3 Sec. 5.

## I.

This Court has held that where there has been no extraordinary dereliction on the part of the State in failing to produce a transcript the defendant is not entitled to a discharge. Rather, he has the option of appealing on the basis of a reconstructed record or of being tried again. *State ex rel. Kisner v. Fox,* ____ W. Va. ____, 267 S.E.2d 451 (1980). In *Kisner* the court reporter lost his notes and could not certify the record. The trial court then ordered that the verdict, judgment and sentence be set aside and that the relator be retried. In denying a writ of prohibition to forestall the retrial, this court held that the defendant must elect either retrial or an appeal on the basis of a reconstructed record.

Unlike *Kisner, supra,* in which the entire transcript was missing, only the transcript of the sentencing hearing is missing in this case. There is no dispute that the hearing was quite short. The appellant did not present any witnesses to support his motion for probation, choosing instead to rely on the probation report. All that transpired

was the sentencing during which the trial court stated his reasons for denying probation. The admitted brevity and simplicity of this hearing in conjunction with the fact that the record before us contains the probation report and the final sentencing orders leads us to conclude that appellate review of the appellant's assignments of error can be adequately accomplished in the absence of the sentencing hearing transcript.

## II.

There is no question, and appellant readily admits, that probation is accurately characterized as a "matter of grace." *State ex rel. Winter v. MacQueen,* 161 W. Va. 30, 239 S.E.2d 660 (1977). Therefore, we will only overturn the decision of a trial court denying probation when that decision constitutes a palpable abuse of discretion.

The appellant argues that since this was only his first offense and since he held a steady job and could get many positive references he should have received probation. However, in this case the probation officer recommended that probation not be given. There had been no restitution made or offered for a crime entailing the theft of money from some of society's most destitute members. In light of these facts we find that the trial court's decision was neither arbitrary nor erroneous.

## III.

*W. Va. Code,* 62-12-8 [1939] provides that a court should set out in its order refusing release on probation "a brief statement" of the reasons for its decision. In this case the trial court's order reads: "the ends of justice would not be served by placing the defendant on probation." While such language is conclusory and perhaps not in the true spirit of the statute, we cannot say that it constitutes error, especially where, as here, the transcript of the hearing to reconsider the sentence is replete with the trial court's explicit reasons for denying probation. *See Tracey v. Janco,* 351 F.Supp. 836 (N.D.W.Va. 1972). Even if we were to conclude that it is inappropriate to rely upon the judge's reasons for denying probation as stated in the record,

rather than in the order, the only relief to which the defendant would be entitled would be remand for the purposes of incorporating the judge's previously stated reasons in the order. *Cf. Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L. Ed.2d 908 (1964); *State v. Clawson*, ____ W. Va. ____, 270 S.E.2d 659 (1980) (case sent back for limited hearing on voluntariness of confession). This would be an entirely vain act, and for that reason the error is harmless.

## IV.

Since the initial indictments in this case were handed down in 1979 this Court has had several opportunities to discuss and refine the law of double jeopardy in West Virginia. In *State ex rel. Watson v. Ferguson*, ____ W. Va. ____, 274 S.E.2d 440 (1980) we held that "a defendant shall be charged in the same indictment in a separate count for each offense, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character. . . ." However, since the State did not have the benefit of this rule in 1979 when the Grand Jury returned its indictments against the appellant, we will not apply *Watson* retroactively. *See State ex rel. Dowdy v. Robinson*, 163 W. Va. 154, 257 S.E.2d 167, 168 (1979). We are quick to note, however, that, had the four charges in this case simply been four counts under one indictment, the procedures used in this case would have passed muster under our recent ruling. Under *Watson*, even when charges must be brought under the same indictment, they can be punished separately. 274 S.E.2d at 444.

The remaining question then is whether these offenses constitute separate crimes. As currently formulated, our double jeopardy test is either the "same evidence" test or the "same transaction" test, whichever is more favorable to the defendant. *Id.* at 446. In this case the same transaction test is not applicable because the crimes took place at different times. *See id.*, n. 16.

Similarly under the "same evidence" test we find no double jeopardy problem. In *United States v. Hale*, 468

F.2d 435 (5th Cir. 1972), where a defendant was charged with twenty counts of willful misapplication of bank funds and securities, the Fifth Circuit had no trouble determining that the double jeopardy clause did not bar separate punishment for each of the counts. The court concluded, "if different evidence is required to prove each count in an indictment, then each count states a separate offense and conviction thereunder will support a separate sentence. *See also State v. Heinz,* 119 N.H. 717, 407 A.2d 814 (1979). Hence, under the application of either test for double jeopardy, the appellant may be given separate sentences for the crimes to which he pled guilty.

In so deciding we are reminded of Justice Miller's observations in *Watson:*

> We do not conceive that in fashioning a double jeopardy policy in regard to what is the "same offense" that we can ignore the fact that multiple victims have been the subject of the defendant's acts. There can be little doubt that one function of a criminal justice system is to enable those individuals who have been victimized by the criminal acts of another to find some individual vindication of the harm done to each. Certainly, the degree of culpability, and as a consequence the degree of punishment, must bear some proportion not only to the magnitude of the crime but also to the number of victims involved. These are fundamental considerations that society expects from a criminal justice system. 274 S.E.2d at 446.

Accordingly for the reasons set forth above, the judgment of the Circuit Court of Pocahontas County is affirmed.

*Affirmed.*